## Commonwealth ex rel. Baldrige v. The Lancaster Insurance and Deposit Company of Pennsylvania.

*H. D. Saylor,* Deputy Attorney-General, and *Paul C. Wagner,* Deputy Attorney-General, for plaintiff.

*Bernard J. Myers,* for defendant.

WICKERSHAM, J., June 4, 1930.—It is suggested by the Attorney-General that the Inland Safety Mutual Insurance Company was incorporated by an act of the general assembly of the Commonwealth of Pennsylvania, approved April 4, 1854, P. L. 260, a copy of which is attached to the suggestion; that by the Act of May 5, 1854, P. L. 551, a copy of which is also attached to the suggestion, the location of the principal place of business of said Inland Safety Mutual Insurance Company was changed, and section 4 of said Act of April 4, 1854, prohibiting the said corporation from issuing bank notes and exercising banking privileges, was repealed. That, in addition to the powers, rights, privileges and franchises granted to it by the said act of assembly, the said Inland Safety Mutual Insurance Company was granted all the privileges and powers conferred upon the Mutual Deposit Insurance Association of Philadelphia, incorporated by the Act of April 29, 1853, P. L. 660, and said corporation was also granted by the said act all of the privileges and powers conferred upon The Girard Fire and Marine Insurance Company of Philadelphia, incorporated under the Act of March 26, 1853, P. L. 242. That on or about April 30, 1855, the name of said Inland Safety Mutual Insurance Company

was duly changed to Inland Insurance and Deposit Company by decree of the Court of Common Pleas of Lancaster County; that on or about June 23, 1892, the property, charter and corporate franchises and rights of said Inland Insurance and Deposit Company were sold at public sale by Franklin Hall, assignee, for the benefit of its creditors, to J. Gus Zook et al.; that thereafter, on or about July 23, 1892, the said Zook and his associates, who purchased the property, charter and franchises of said Inland Insurance and Deposit Company, attempted to organize a corporation under the name of Lancaster Insurance and Deposit Company of Pennsylvania, the above named defendant corporation, under authority and requirements of the act of assembly of the Commonwealth of Pennsylvania approved May 25, 1878, P. L. 145, as supplemented and amended, *inter alia*, by the Act of May 31, 1887, P. L. 278; and the said Lancaster Insurance and Deposit Company of Pennsylvania filed in the office of the Secretary of the Commonwealth the certificate of organization provided for and required by section 2 of said Act of 1878, but did not, on said date or at any other time thereafter, file its acceptance of the provisions of article XVI of the Constitution of said Commonwealth, provided for and required by section 3 of said Act of 1878, and no such acceptance is now on file or ever has been on file in the office of the Secretary of the Commonwealth.

It is further suggested that the Lancaster Insurance and Deposit Company of Pennsylvania has failed to exercise its corporate privileges for a period of two years; that the said defendant corporation is under the supervision of the Secretary of Banking of the Commonwealth of Pennsylvania by virtue of the provisions of the Banking Act of June 15, 1923, P. L. 809, and has been returned by the Secretary of Banking to the Attorney-General for appropriate proceedings under the provisions of section 17 of said act, as amended by Act No. 400, approved May 5, 1927 [P. L. 762]. That the said defendant corporation has and owns no property or assets of any kind or description, has failed to exercise its corporate powers, rights, privileges and franchises for a period of at least more than thirty-five years, by reason of which it has abandoned its corporate powers, rights, privileges and franchises which have been and are forfeited and have become null and void.

The Attorney-General suggests that a writ of *quo warranto* be issued by this court against the said defendant company to appear and show by what authority it claims to have and use the powers, rights, privileges and franchises of the corporation or any of the powers, rights, privileges and franchises conferred by the said Act of 1854 and its supplements, and why it should not be ousted therefrom.

To the suggestion of the Attorney-General, the defendant filed an answer admitting paragraphs one to seven, inclusive; the succeeding paragraphs of the suggestion are denied for reasons set forth in the answer.

To the answer of the defendant, the Attorney-General filed a replication, and by stipulation it was agreed that trial by jury be dispensed with and that the same be submitted to the decision of the court, to be heard and determined under the Act of April 22, 1874, P. L. 109.

The case came on to be heard in open court June 19, 1928, at which time testimony, oral and documentary, was received by the court. Because of the illness of Deputy Attorney-General Wagner, the case was not argued before the court *in banc* until April 8, 1930.

After carefully considering the evidence in this case and the several acts of assembly to which reference has been made, we find the following

708

## Facts.

1. The Lancaster Insurance and Deposit Company of Pennsylvania was originally known as the "Inland Safety Mutual Insurance Company," being incorporated by a special act of the general assembly, with the power and authority to make contracts of insurance of various kinds.

2. On or about June 23, 1892, the property, charter and corporate franchises and rights of said company were sold at public sale to individuals for the benefit of the company's creditors.

3. On or about July 23, 1892, the individuals purchasing the said property, charter and corporate franchises and rights of the "Inland Insurance and Deposit Company" prepared and filed with the Secretary of the Commonwealth a certificate of organization of a new corporation, styled "The Lancaster Insurance and Deposit Company of Pennsylvania," under the provisions of the Act of Assembly of May 25, 1878, P. L. 145, and its supplements and amendments.

4. The said incorporators did not comply with the provisions of the said Act of 1878 and the amendment of May 31, 1887, P. L. 278, in that they did not at any time on or after July 23, 1892, file an acceptance of the provisions of artivle xvi of the Constitution of the Commonwealth of Pennsylvania.

5. The defendant corporation has failed to exercise its corporate privileges for more than thirty-five years, to wit, since on or about July 23, 1892.

6. The defendant corporation has abandoned its corporate powers, rights, privileges and franchises.

7. The defendant corporation has and owns no property or assets of any kind or description.

8. The defendant corporation possesses the power to conduct a general insurance business and also the powers bestowed by acts of the legislature upon banking companies.

9. The defendant corporation comes under the supervision of the Secretary of Banking and of the Insurance Commissioner of the Commonwealth.

10. The defendant corporation is not registered with either the Secretary of Banking or the Insurance Commissioner of the Commonwealth.

11. The defendant corporation has not transacted any business under its reorganization from 1892 to this date.

12. The defendant corporation has not engaged in the banking business since 1892.

13. The defendant corporation has not engaged in the insurance business since 1892.

14. The defendant corporation is not a member of any fire insurance rating bureau, and has not filed any rates with the Insurance Department.

15. The defendant corporation has no assets.

## Discussion.

Counsel for the defendant have not filed a brief, nor have they filed any requests for findings of fact and conclusions of law.

It was agreed by the parties to these proceedings that the powers of the said defendant corporation include not only those of a general insurance character, but also those imposed upon banking companies.

It is the contention of the Commonwealth that, despite the filing of the certificate of organization aforesaid in the office of the Secretary of the Commonwealh, there was no compliance by said incorporators with the provisions of the Acts of 1878 and 1887, in that the incorporators did not, on July 23, 1892, or at any time thereafter, file their acceptance of the provisions of arti-

cle XVI of the Constitution of the Commonwealth, provided for in and required by section 3 of the said Act of May 25, 1878, and that, accordingly, the said corporation never properly functioned as such thereafter.

It is the further contention of the Commonwealth that the defendant company failed to exercise its corporate privileges for at least more than thirty-five years; that it has abandoned its corporate powers; that it owns no property or assets, that it is under the supervision of the Secretary of Banking and the Insurance Commissioner of the Commonwealth, although it has not registered as required by law with either of said departments, and that by reason of the aforesaid, the charter and corporate powers, rights, privileges and franchises of the defendant company have been and are forfeited and have become null and void. With these contentions we are in accord.

It is the contention of the defendant that it has not failed to exercise its corporate privileges for a period of two years or more, and that it has, on the contrary, written insurance on plate glass and one fire insurance policy, has filed various reports with the Auditor-General, and has kept alive its corporate charter. With this contention we cannot agree, as it is not supported by the evidence.

We have found as a matter of fact that the contention of the Attorney-General has been sustained by the testimony. Defendant did not comply with the provisions of the said Act of 1878, section 3 of which reads as follows:

"The provisions of this act shall not inure to the benefit of any corporation unless such corporation shall, before claiming or using the benefits of this act, file in the office of the Secretary of the Commonwealth, an acceptance of the provisions of article 16 of the Constitution of this Commonwealth, which acceptance shall be made by resolution adopted at a regular or called meeting of the directors, trustees or other proper officers of such corporation, certified under the seal of the corporation; and a copy of which resolution, certified under the seal of the office of the Secretary of the Commonwealth, shall be evidence for all purposes."

The said Act of 1878 was finally amended by the Act of June 20, 1911, P. L. 1092, which provides that whenever the property of any corporation created by or under any law of this state is sold or conveyed, under and by virtue of any process or decree of any court of this state, the person or persons for or on whose account the said property is purchased, shall be and are constituted by virtue of this act "a body politic and corporate, and shall be vested with all the right, title, interest, property, possession, claims and demand in law and equity," of, in and to such property, together "with all the rights, powers, immunities, privileges and franchises of the corporation as whose the same may have been sold."

Applying the statutory requirements to the facts as we have found them to be from the evidence, it appears that the persons who purchased the assets of the defunct Inland Insurance and Deposit Company did not comply with all the requirements of the Act of 1878, as amended, and thereby did not legally organize themselves into a body politic and corporate. It follows that all acts performed by them thereafter were done in violation of the laws of the Commonwealth. The result was, therefore, that the purchasers of said defunct corporation had no corporation and such business as they attempted to perform, on or after July 23, 1892, was illegally consummated.

It is further established by the evidence that the powers granted to the Inland Safety Mutual Insurance Company and passing to its successor, the defendant herein, under the provisions of the Act of 1878, included those of a general banking nature as well as insurance company powers. It is admitted by the defendant that it has not for some time past engaged in the business

of banking; but defendant contends it is not under the supervision of the Secretary of Banking. With this contention we cannot agree. Section 4 of the Act of 1923 [P. L. 809] provides:

"The said supervision, duties and powers shall extend and apply to the following corporations now or hereafter incorporated under the laws of this state or under the laws of any other state and authorized to transact business in this state; namely, all such corporations having power to receive and receiving money on deposit or for safe-keeping otherwise than as bailee, including all banks, banking companies, coöperative banking associations, trust, safe deposit, real estate, mortgage, title insurance, guarantee, surety and indemnity companies, savings institutions, savings banks and provident institutions. The said supervision, duties and powers shall also extend and apply to mutual savings funds, building and loan associations and corporations doing a safe-deposit business only."

It is very clear, therefore, that the defendant institution having the "power and authority to receive on deposit specie, bullion, bank notes and other property," "to loan the funds and money on deposit," "to issue scrip in payment of dividends, or any paper, bill or note, to be circulated as bank notes," and to exercise banking privileges generally, does come under the supervision of the Secretary of Banking.

Furthermore, section 17 of the Banking Act of 1923, as amended, states that whenever any corporation under the supervision of the Department of Banking has failed to exercise its corporate privileges for two years, it shall be returned by the Secretary of Banking to the Attorney-General, who shall proceed by *quo warranto* against such corporation, to the end that it may be ousted from its charter rights and its corporate privileges be declared null and void. It clearly appears that the defendant corporation has not exercised its banking privileges or any of its banking powers, at least since 1892, and, therefore, the Commonwealth is entitled to a decree of ouster.

Relative to the insurance powers of the defendant corporation, the evidence in support of the contention of the defendant is rather nebulous and very unsatisfactory. It was testified that for a brief period of time somewhat prior to the institution of these proceedings individuals who held the charter of the defendant corporation, in a desultory fashion, wrote a certain number of so-called policies insuring plate glass, and, in one case, a fire insurance policy covering a chicken coop. This, we think, does not constitute such a user of its powers as to entitle the defendant to a dismissal of these proceedings. The defendant company did not have any fixed rates of insurance, and no schedule filed with the Insurance Department, did not belong to a fire insurance rating bureau, and, so far as the record shows, did not actually use policy forms in writing this so-called insurance. Furthermore, the company was not registered with the Insurance Department, and if it did an insurance business, it violated the Act of May 17, 1921, P. L. 682. We think the Commonwealth is entitled to an ouster decree. Section 339 of the Act of 1921 [P. L. 712] provides: ". . . If any insurance company shall cease for two years to make new insurances, its corporate powers and existence shall cease, and the court, upon petition of the Attorney-General, may fix by decree the time within which it shall settle and close its affairs." What such time should be was stated by President Judge Hargest in his opinion for the Department of Justice, dated July 28, 1909, reported in 36 Pa. C. C. Reps. 450. This opinion held that *quo warranto* proceedings lay against a railway company, and the following words conclude the opinion:

"The records in the office of the Secretary of the Commonwealth show that this company was chartered in 1871, and, in view of the fact that the legis-

lature has fixed two years as the time within which certain other corporations are required to exercise their charter rights, this department is of the opinion that *quo warranto* proceedings will lie."

That the defendant corporation was incorporated by special act of the legislature is no reason for exempting it from the institution of *quo warranto* proceedings, nor for exempting it from the regulations of an administrative department of the state government: Chincleclamouche Lumber and Boom Co. *v.* Com., 100 Pa. 438; Terrett *v.* Taylor, 9 Cranch. 43, 3 L. Ed 650; Mumma *v.* The Potomac Co., 8 Pet. 281, 8 L. Ed. 945; Com. *v.* The Commercial Bank of Penna., 28 Pa. 383.

We think, therefore, the charter of the defendant company should be declared forfeited and null and void.

### Conclusions of law.

1. The defendant corporation has not complied with the requirements of the law, in that the incorporators organizing it in 1892 did not file, nor have they since filed, with the Secretary of the Commonwealth an acceptance of the provisions of article XVI of the Constitution.

2. The incorporators of the defendant corporation after reorganization, not having fully complied with the requirements of the law by failing to accept the provisions of the Constitution, are not a proper corporation or body politic.

3. The defendant corporation in having sold what purported to be policies of insurance on plate glass without any fixed rate of insurance, without having filed a schedule of rates with the Insurance Department, and without belonging to a fire insurance rating bureau, did not legally conduct an insurance business.

4. The defendant corporation, not being registered with the Insurance Department, could not legally conduct an insurance business.

5. The defendant corporation has violated the law, in that it has attempted to conduct an insurance business in a desultory fashion without being licensed by the Insurance Commissioner, as required by law.

6. The defendant corporation has not exercised any of its banking powers or privileges for a period in excess of two years prior to the institution of these *quo warranto* proceedings.

7. The charter of the defendant corporation has been forfeited for mis-user and non-user.

8. The charter of the defendant corporation is declared forfeited and null and void, and all the corporate powers, rights, privileges and franchises of said defendant corporation have been and are forfeited, and are declared forfeited and null and void.

9. The costs of these proceedings are to be paid by the defendant.

### Judgment.

Judgment is directed to be entered against the defendant. We give judgment that such defendant be ousted and altogether excluded from holding the franchises, privileges and powers which it claims to hold and have under its charter of incorporation; and we direct that the costs be paid by the defendant.

A formal decree will be signed when prepared by the Attorney-General, unless exceptions be filed within the time allowed by law.

From Homer L. Kreider, Harrisburg, Pa.