## JACOB MUMMA, PLAINTIFF IN ERROR v. THE POTOMAC COMPANY.

The case was argued by Mr Brent and Mr Tabbs, for the plaintiff in error; and by Mr Jones and Mr Coxe, for the defendants.

Mr Justice STORY delivered the opinion of the Court.

This is a writ of error to the circuit court of the District of Columbia, for the county of Washington. The case presented on the record, is shortly this.

The plaintiff in error, Mummia, in June 1818, recovered a judgment against the Potomac Company, for the sum of five thousand dollars. No steps were taken to enforce the payment of the judgment, nor any further proceedings had in relation thereto, until the 18th day of April 1828, on which day a writ of scire facias was issued from the clerk's office of said court, against the said Potomac Company to revive said judgment, which case was continued by consent of parties, from term to term, until December term of said court, in the year 1830, at which term the following plea and statement were filed by consent of parties. "The attorneys upon the record of the said defendants, now here suggest and show to the court, that since the rendition and record of said judgment, the said Potomac Company, in due pursuance and execution of the provisions of the charter of the Chesapeake and Ohio Canal Company, enacted by the states of Maryland and Virginia, and by the congress of the United States, have duly signified their assent to said charter, &c., and have duly surrendered their charter, and conveyed in due form of law, to the said Chesapeake and Ohio canal company, all the property, rights and privileges by them owned, possessed and enjoyed under the same; which

surrender and transfer from said Potomac Company, have been duly accepted by the Chesapeake and Ohio Canal Company, as appears by the corporate acts and proceedings of said company, and final deed of surrender from the said Potomac Company, dated on the 15th day of August 1828, duly executed and recorded in the several counties of the states of Virginia and Maryland, and the District of Columbia, wherein said Potomac Company held any lands, and wherein the canals and works of said company were situated; which said corporate acts and proceedings, the said attorneys here bring into court, &c. whereby the said attorneys say, the charter of the said Potomac Company became, and is vacated and annulled, and the company and the corporate franchises of the same are extinct," &c.

Whereupon the following statement and agreement were entered into and signed by the counsel for both parties, and made a part of the record.

"*The truth of the above suggestion is admitted;* and it is agreed to be submitted to the court, whether, under such circumstances, any judgment can be rendered against the Potomac Company upon this scire facias, reviving the judgment in said writ mentioned, and that reference for the said corporate acts and proceedings, and the deed in the above suggestion mentioned, be had to the printed collection of acts, &c. &c., printed and published by authority of the president and directors of the Chesapeake and Ohio Canal Company in 1828."

Upon this statement and agreement the circuit court gave judgment, that the plaintiff take nothing by his writ; and the question now is, whether this judgment is warranted by law.

Two points have been made at the bar. 1. That the corporate existence of the Potomac Company was not so totally destroyed by the operation of the deed of surrender, as to defeat the rights and remedies of the creditors of the company. 2. That the deed of surrender violates the obligation of the contracts of the company, and that the legislative acts of Virginia and Maryland, though confirmed by the congress of the United States, are on this account void; and can have no legal effect.

We think that the agreement of the parties completely covers the first point, and precludes any examination of it. That

agreement admits the truth of the suggestions in the plea of the attorneys for the Potomac Company; and by that it is averred, that the charter of the Potomac Company was duly surrendered to the Chesapeake and Ohio Canal Company, and was duly accepted by the latter; and that thereby the charter of the Potomac Company became, and is vacated and annulled. And if we were at liberty to consider the last averment, not as an averment of a fact, but of a conclusion of law, the same result would follow ; for the thirteenth section of the act of Virginia of January 1824, incorporating the Chesapeake and Ohio Canal Company, declares, that upon such surrender and acceptance, " the charter of the Potomac Company shall be, and the same is hereby vacated and annulled ; and all the powers and rights thereby granted to the Potomac Company, shall be vested in the company hereby incorporated."

Unless, then, the second point can be maintained, there is an end of the cause ; for there is no pretence to say that a scire facias can be maintained; and a judgment had thereon, against a dead corporation, any more than against a dead man. We are of opinion that the dissolution of the corporation, under the acts of Virginia and Maryland, (even supposing the act of confirmation of congress out of the way) cannot, in any just sense, be considered, within the clause of the constitution of the United States on this subject, an impairing of the obligation of the contracts of the company by those states, any more than the death of a private person can be said to impair the obligation of his contracts. The obligation of those contracts survives ; and the creditors may enforce their claims against any property belonging to the corporation, which has not passed into the hands of bona fide purchasers ; but is still held in trust for the company or for the stockholders thereof, at the time of its dissolution, in any mode permitted by the local laws. Besides, the twelfth section of the act incorporating the Chesapeake and Ohio Canal Company, makes it the duty of the president and directors of that company, so long as there shall be and remain any creditor of the Potomac Company, who shall not have vested his demand against the same in the stock of the Chesapeake and Ohio Canal Company (which the act enables him to do), to pay to such creditor or creditors, annually, such dividend or proportion of the net amount of

the revenues of the Potomac Company, on an average of the last five years preceding the organization of the said Chesapeake and Ohio Canal Company, as the demand of the said creditor or creditors at that time may bear to the whole debt of one hundred and seventy-five thousand eight hundred dollars, (the supposed aggregate amount of the debts of the Potomac Company). So that here is provided an equitable mode of distributing the assets of the company among its creditors, by an apportionment of its revenues, in the only mode in which it could be practically done upon its dissolution ; a mode analogous to the distribution of the assets of a deceased insolvent debtor.

Independent of this view of the matter, it would be extremely difficult to maintain the doctrine contended for by the plaintiff in error, upon general principles. A corporation, by the very terms and nature of its political existence, is subject to dissolution, by a surrender of its corporate franchises, and by a forfeiture of them for wilful misuser and nonuser. Every creditor must be presumed to understand the nature and incidents of such a body politic, and to contract with reference to them. And it would be a doctrine new in the law, that the existence of a private contract of the corporation should force upon it a perpetuity of existence contrary to public policy, and the nature and objects of its charter.

Without going more at large into the subject, we are of opinion that the judgment of the circuit court ought to be affirmed. But as there is no such corporation in esse as the Potomac Company, there can be no costs awarded to it.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel ; on consideration whereof, it is ordered, and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed without costs.