A. W. ALLEN, Appellee, v. NORTHWESTERN MANUFACTURING COMPANY, Appellant.

CORPORATIONS: Purchase of Stock as "Loan." A purchase
1  of preferred stock may, in view of the subscription contract
and articles of incorporation, constitute a "loan" to the cor-
poration, with consequent right on the part of the certificate
holder to surrender the certificate and recover the amount
thereof as a general creditor.

CORPORATIONS: Retiring Stock Prior to Paying General Cred-
2  itors. A corporation which has lawfully issued its preferred
stock under agreement to repay the sum paid for the stock
at a named time, on surrender of the certificate, may not avoid
its obligation under the plea that to enforce the obligation
would, in effect, compel the company to retire said stock
prior to the payment of its general creditors. (Sec. 1621, Code,
1897.)

*Appeal from Woodbury District Court.*—W. G. SEARS,
.·Judge.

OCTOBER 2, 1920.

ACTION to recover judgment against defendant upon its
written obligation to pay a certain sum of money, with in-
terest. Trial to the court, and judgment against defendant
for $117.80 and costs. Defendant appeals.—*Affirmed.*

*Sears, Snyder & Gleysteen, Vail E. Purdy,* and *H. C.
Harper,* for appellant.

*O. E. Martin,* for appellee.

PRESTON, J.—The case was tried, for the most part, on
the pleadings, and upon certain admissions by both parties
at the trial.

It appears that, on December 21, 1914, plaintiff purchased of the defendant one $100 share of the preferred capital stock of defendant company. In the purchase of said share of stock, it was agreed between plaintiff and defendant that the certificate evidencing the purchase was issued and received upon the conditions indorsed thereon, and signed by the president and secretary. There was indorsed thereon the following:

1. CORPORATIONS: purchase of stock as "loan."

"The within certificate of stock is issued and received on the following terms and conditions: It shall bear interest at eight per cent per annum, payable annually, on the 28th day of October of each year, out of the net profits of the business of the company, and before any dividends or surplus are declared or paid on the common stock. * * * This certificate, with interest, shall be paid in full, to the lawful holder thereof, at the expiration of two years from date, upon demand therefor, and surrender of this certificate. This certificate shall not draw interest after maturity."

Signed by the president and secretary of the company.

Some other provisions are in the certificate and indorsement, both of which are here set out:

"This certifies that A. W. Allen is the owner of one share of one hundred dollars each of the preferred capital stock of Northwestern Manufacturing Company, fully paid in cash and nonassessable. Transferable only on the books of the corporation by the holder hereof in person or by attorney, upon surrender of the certificate properly indorsed.

"This certificate is issued and received upon the conditions indorsed hereon and signed by the president and secretary.

"In witness whereof, the said corporation has caused this certificate to be signed by its duly authorized officers and to be sealed with the seal of the corporation at Sioux City, Iowa, this 21st day of December, A. D. 1914.

"Jno. B. Johnson,                           H. K. Hansen,
   "Secretary.                                  President."

(Corporate Seal)

## Exhibit B.

"The within certificate of stock No. 8 is issued and received on the following terms and conditions:

"It shall bear interest at eight per cent per annum, payable annually on the 28th day of October of each year out of the net profits of the business of the company and before any dividends or surplus are declared or paid on the common stock. The company reserves the right to pay to the lawful holder hereof the principal sum of, and accrued interest on, this certificate at any time after one year from date hereof, upon giving the person in whose name this certificate stands on its books, thirty days' notice of its election so to do, and on surrender of this certificate. Notice of intention to redeem this certificate shall be given by mailing the same to the person in whose name the certificate stands on the books of the company at the last known post-office address of said person, or to the address given on the books of the company. After thirty days' notice of intention to redeem have elapsed, this certificate shall cease to draw interest. This certificate with interest shall be paid in full to the lawful holder thereof at the expiration of two years from date, upon demand therefor and surrender of this certificate. This certificate shall not draw interest after maturity."

Sixteen dollars interest has been paid, but no further payments of either principal or interest. On February 26, 1918, and again on March 14th, plaintiff demanded of defendant, and its president, secretary, and treasurer, payment of the principal sum, with unpaid interest, and offered to surrender, and tendered to the defendant and said officers, the said certificate, in accordance with the terms of the contract. Plaintiff, in his petition, tendered and offered to surrender said share of stock. The defendant admits the purchase, under the terms and conditions alleged. Appellant contends that the agreement of defendant, to take up the stock at the end of two years, was restricted, in the event of liquidation, dissolution, or winding up of the corporation, under the provisions of Article 5 of the articles of

incorporation. A part of Article 5, and so much as appears to be material, follows:

"The preferred stock of this corporation shall be issued and sold from time to time as the board of directors may elect, and upon such terms and conditions as the board of directors may prescribe; such terms and conditions to be indorsed upon said stock. The corporation shall redeem and retire its preferred stock at the par value thereof, plus the accrued, unpaid portion of the accumulated dividend on its preferred stock, at the time of such redemption, as the board of directors may elect, not inconsistent, however, with the conditions and requirements prescribed by the board of directors at the time the stock is issued. Before retiring any preferred stock, the corporation shall give thirty days' written notice to the owner thereof, as shown upon the corporation books, of its intention so to do. The holder of the preferred capital stock shall be entitled to receive, when and as declared, from the surplus or net profits of the corporation, yearly dividends at the rate of eight per cent per annum, and no more. The dividends on all of said preferred stock shall be cumulative. Whenever all cumulative dividends on said preferred stock for all previous years shall have been declared and paid, the board of directors may declare dividends on said common capital stock, payable then and thereafter, out of any remaining surplus or net profits, in such amount as it may deem best; it being the intent that the said preferred capital stock shall have its full dividends before any profits are divided upon the said common capital stock. No dividends shall be paid on either preferred or common capital stock except out of the surplus or net profits. In the event of liquidation, dissolution, or winding up, whether voluntary or involuntary, of the corporation, and after payment of all just debts, the holders of the preferred capital stock shall be entitled to be paid in full, both the par value of their shares and the unpaid dividends accrued thereon, before any amount shall be paid to the holders of the said common capital stock, and after the payment to the holders of the said preferred capital stock of the un-

paid, accrued dividends thereon and the full par value of all of the shares of the said preferred capital stock, the remaining assets and funds of the corporation shall be divided and paid to the holders of the common capital stock, according to their respective shares, as hereinbefore provided. The preferred capital stockholders shall have no right to vote at any regular or special meeting of the stockholders of this corporation, and shall have no voice in the management of the corporation, and only the owners and holders of the common capital stock shall be entitled to vote their stock in the management of the corporation. No stock shall be issued until the corporation has received payment in full therefor."

The by-laws provide, among other things:

"Sec. 1. Dividends shall be declared and paid out of the surplus profits of the corporation as often and at such times as the board may determine. No dividend shall be declared or paid that tends to curtail the effective operation of the business."

The defendant alleged in its answer that it is not actively engaged in business, and that it has been, for some time, in the process of liquidation and winding up of its affairs; that no dividends have been declared or paid on either the common or preferred stock, because they have not been earned; and further, that plaintiff is not entitled to maintain this action, by reason of the provisions of the articles of incorporation and by-laws, and the financial condition of the company, and the laws of Iowa. It was stipulated and admitted that plaintiff received $16 to apply upon the interest, under the obligations evidenced by his share of stock, and that plaintiff made demand, as alleged by him. Plaintiff admitted that the company is in the process of voluntary liquidation, and that the company was insolvent; admits that the general creditors of the corporation have not been paid. The trial court found that the stock was sold under the agreements before set out; that there was a demand and tender by plaintiff, as before stated; that the company was in process of liquidation; and that, from the

date of the maturity of said certificate, as evidenced by the indorsement thereon, and the demand made by plaintiff, prior to the commencement of this action, plaintiff ceased to be a stockholder, and became a general creditor of defendant, under the provisions of the certificate and indorsements. It also required plaintiff to surrender said certificate of stock, and deposit it with the clerk of court, for the use and benefit of defendant; and decreed that plaintiff has no further interest therein; and rendered judgment against the defendant; and found that plaintiff was entitled to have his judgment established as a general claim against the company from the date of the demand and his tender, plaintiff having deposited the certificate with the clerk for the use and benefit of the defendant.

We take it that the real question in the case is whether, under the agreement, plaintiff was a stockholder in the company, and bound by the rights and liabilities of a stockholder. The defendant contends that he was such, and that the $16 paid as interest was a dividend, rather than interest, and that there could be no dividends under the circumstances. But the record shows that the $16 paid was paid as interest, and seems to have been paid, recognizing the defendant's obligation to so pay, under the contract. It is doubtless true, as contended by appellant, that dividends, as such, could not be paid. The errors assigned are that the court ignored the provisions of the articles of incorporation and by-laws; and that the court erred in holding that plaintiff had become a general creditor of the company; that the company is prohibited by law from retiring said stock while insolvent; and that the court erred in entering judgment for dividends, when there were no net earnings or surplus from which the same could be paid; and that this was in violation of the articles of incorporation and the laws of the state. It may be true, as contended by appellant, that, in the absence of the agreement under which the defendant sold the stock to plaintiff, the defendant could not retire its preferred stock at par. But the articles of incorporation, in regard to such retirement, provide that this

must not be inconsistent with the conditions and require-
ments prescribed at the time the stock was issued.  As we
have seen, it was agreed, at the time plaintiff paid the
money to the defendant, that the certificate, with interest,
should be paid in full at the expiration of two years from
date, upon demand therefor and surrender of the certificate.
The plaintiff made the demand, and surrendered the cer-
tificate, thus complying with all he was required to do.  It
appears to us that the transaction was a loan by plaintiff to
the defendant, by which defendant agreed to pay, with in-
terest, at the end of two years, and that he was not, strictly
speaking, a stockholder.  Appellant says that plaintiff was
a stockholder at the time of the commencement of the
action, and at the time the judgment was entered, and that
such statement proves itself, and needs no citation of
authority.

Appellant contends further that, at the time of the com-
mencement of this action, and the entering of the judgment,
defendant was owing general creditors, and that its capital
stock was impaired, and that, therefore, the
company could not legally retire its pre-
ferred stock at par, before the payment of
general creditors, and then only *pro rata*
with other stockholders of the same class,
under Section 1621, Code of 1897, which reads as follows:

2. CORPORA-
TIONS:
retiring stock
prior to pay-
ing general
creditors.

"The diversion of the funds of the corporation to other
objects than those mentioned in its articles and in the
notice published, if any person be injured thereby, and the
payment of dividends which leaves insufficient funds to meet
the liabilities thereof, shall be such fraud as will subject
those guilty thereof to the penalties of the preceding sec-
tion; and such dividends, or their equivalent, in the hands
of stockholders, shall be subject to such liabilities.  If the
directors or other officers or agents of any corporation shall
declare and pay any dividend when such corporation is
known by them to be insolvent, or any dividend the pay-
ment of which would render it insolvent, or which would
diminish the amount of its capital stock, all directors, of-

ficers or agents knowingly consenting thereto shall be jointly and severally liable for all the debts of such corporation then existing, but dividends made in good faith before knowledge of the occurring of losses shall not come within the provisions of this section."

And they contend that to retire said share of stock by the company was prohibited by law, under the circumstances, and would subject the corporation to a forfeiture of its charter, under Sec. 1622, Code of 1897, which reads:

"Any intentional violation by the board of directors or the managing officers of the corporation of the provisions of the two preceding sections shall work a forfeiture of the corporate privileges, to be enforced as provided by law. If the indebtedness of any corporation shall exceed the amount of indebtedness permitted by law, the directors and officers of such corporation knowingly consenting thereto shall be personally and individually liable to the creditors of such corporation for such excess."

The plaintiff did not ask, nor did the court hold, that the share of stock in question could be retired; but the claim was, and the holding of the court was, that there was a contract, by which defendant agreed to pay. Of course, defendant could not be required to pay unless the stock was surrendered; so that, conceding defendant's claim that the stock could not be retired, the defendant could be required to pay its debts, or have a claim therefor established against it, as for a debt. Appellant argues that the rights of the plaintiff are subject to the articles of incorporation and by-laws. We understand appellee to so concede, and they claim that all that was done, was done in accordance therewith, and with the agreement between plaintiff and defendant. We are cited to no authority by appellant other than the statutes before set out. Appellee contends that the articles of incorporation permitted and authorized the defendant to enter into the contract, and we have seen that this is so. Appellee further contends that defendant is bound by its contract. He cites *Matson v. Bauman,* 139 Minn. 296 (166 N. W. 343). The citation may not be directly

in point. In that case, the action was not against the corporation. Appellee also cites *Burt v. Rattle,* 31 Ohio State 116, 130, to the proposition that a person who advances money to a corporation, and accepts its agreement for its repayment, and who, by express agreement, takes no interest or risk in the concerns of the company, is a creditor of the company, and to call him a stockholder is a simple misnomer. They cite, further, *Field v. Eastern Building & Loan Assn.,* 117 Iowa 185, and *Hammerquist v. Pioneer Sav. & Loan Co.,* 15 S. D. 70 (87 N. W. 524), to the proposition that, where a shareholder in a corporation had paid in full the stipulated sum, in consideration of which he was to receive, at the expiration of two years from date, a repayment of the sum paid, together with interest, the company issuing the share could not avoid such payment by pleading that the contract was *ultra vires,* being forbidden by the laws of the state under which it was organized. Appellant makes no answer to these authorities.

We are of opinion that the trial court rightly decided the case, and its judgment is—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.