**BRUCE v. HELVERING, Commissioner of Internal Revenue.**

**No. 6262.**

United States Court of Appeals for the District of Columbia.

Argued Jan. 15, 1935.

Decided Feb. 25, 1935.

Frank W. Mondell and William H. Mondell, both of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Robert H. Jackson, Hartford Allen, and Harry Marselli, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

In January, 1928, E. E. Bruce & Co. was a Nebraska corporation conducting business in Omaha in that state. Its capital structure consisted of 2,380 shares of common stock. Petitioner owned 700 shares, her sister owned 700 shares, and the remaining 980 shares were owned by employees and former employees of the corporation. The Board found as a fact that petitioner and her sister, as of the time mentioned, desired to sell a part of their Bruce stock, in order to reduce their investment in that company and bring it more in line, as to amount, with their other investments.

On January 27, 1928, Churchill Drug Company, also a Nebraska corporation, determined, if possible, to acquire the entire capital stock of Bruce Company, and to that end authorized its president and secretary to purchase the stock on such terms and conditions as they thought advisable.

On January 28, the president and secretary of Churchill Company offered to purchase from petitioner and her sister 400 shares of the capital stock of Bruce Com-

pany for $96,000 cash. Each sister accepted the offer for 200 shares. Immediately after the sale had been agreed to, the president of Churchill Company stated to the two sisters that his company desired and intended to obtain all the outstanding stock of Bruce Company in order to merge the two corporations, and then offered on behalf of Churchill Company to exchange 2,400 shares of its preferred stock for the remaining 1,000 shares of Bruce stock then owned by the two sisters. The sisters had never before received such an offer, nor were they previously aware of Churchill Company's purpose, but after considering the offer for a part of that day, they accepted it. Within a few days thereafter the exchange of stocks was consummated, and at the same time the payment of the purchase money on account of the 400 shares was duly made.

On or before April 18 following, Churchill Company had acquired all the outstanding shares of Bruce Company, and on that day the board of directors of Bruce Company authorized the transfer to Churchill Company of all its assets; and thereupon Bruce Company was dissolved. The Commissioner treated the sale of the 200 shares and the exchange of the 500 shares of Bruce stock belonging to petitioner as a single transaction and determined gain from the transaction to the extent of the $48,000 of cash which petitioner received. Petitioner, in her tax return for 1928, treated the two transactions as separate, and reported the $48,000 cash received by her for 200 shares of Bruce stock and paid the tax on the basis of the difference in its cost price and sale price. She treated the exchange of the 500 shares of Bruce stock for 1,200 shares of Churchill stock as a tax exempt exchange under the provisions of section 112 (b) (3) of the Revenue Act of 1928 (26 USCA § 2112 (b) (3). The result of the Commissioner's action was to increase the tax liability some $4,000. The Board sustained the Commissioner's determination, and this appeal resulted. The applicable subdivisions of the section of the act are appended as a footnote.[1]

The Board, after finding the facts to be as we have stated them, was of opinion that despite the fact petitioner had entered into a binding agreement for the sale of 200 shares of her Bruce stock before she had heard of the plan of reorganization, and therefore before she negotiated for the exchange of her remaining shares, "still both transactions were made pursuant to the same plan of reorganization," and the Board apparently thought this was conclusive even though, as it suggests, the plan of reorganization was not her plan, and even though, likewise, she had not heard of it when she sold her 200 shares of stock for money.

The Board says: "Here the petitioner, pursuant to the plan of reorganization, gave up her rights to 700 shares of the stock of E. E. Bruce & Co. and received not only stock of the Churchill Drug Co., but also cash. Thus section 112 (b) (3) does not apply, but the exchange which she made of the 700 shares would have been within the provisions of section 112 (b) (3) if it were not for the fact that the property received in the exchange consisted not only of property permitted by such paragraph to be received without the recognition of gain, but also of money."

Our criticism of this statement is that its foundation is without factual support. Petitioner did not give up her rights to 700 shares of Bruce Company stock for stock in Churchill Company and cash. On the contrary, she sold 200 shares of stock for money. When that was done, she had but 500 shares remaining, and only these she exchanged for Churchill stock. Unless, therefore, the Commissioner is right in treating the two separate transactions as one, it follows necessarily the Board's conclusion is wrong.

The Commissioner gives no reason for his holding, nor does the Board, and we

**1** "(b) (3) *Stock for Stock on Reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * *

"(c) *Gain from Exchanges not Solely in Kind.* (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property." 26 USCA § 2112 (b) (3), (c) (1).

444

ourselves are unable to supply one. If petitioner, after making a binding contract for the sale of 200 shares of stock, had declined the subsequent offer of exchange, it is perfectly obvious the transaction would have been just an ordinary sale of stock for money with no relation to the reorganization plan. On the other hand, if the sale of her 200 shares of stock for money had been conditioned on the exchange of her 500 shares of stock for stock in the other company, the transaction would have been one directly under the provisions of section 112 (c) (1). And so also it would have been if the separation of the transactions were a fraud or a trick; but neither of these conditions is even contended for. Petitioner, as all agree, determined, entirely for investment purposes, to sell part of her share holdings in Bruce Company. With that purpose in view, she bargained with the president of Churchill Company for the sale of a limited number of shares at so much per share in money. She committed herself and was bound. The transaction was a completed one; the minds of the parties met and carried with it unconditional liability each to the other. It was a closed sale, and beneficial ownership passed. Not until then was petitioner informed by the purchaser he intended, on behalf of his company, to buy all other shares of Bruce stock outstanding, except those belonging to petitioner and her sister; and that for these he was willing to deliver, in exchange, 2,400 shares of the preferred stock of his company. That this proposal was accepted later in the same day is neither significant nor, as we think, important. There being no challenge to the good faith of petitioner or to the verity of the facts on which she relies, the result would be the same if the two transactions had been thirty or sixty days apart, and we think it certainly would not be contended in the latter case there was but a single transaction involving, as to all 700 shares, an exchange of stock in one corporation for stock and money in another.

The case we have would be wholly different if it appeared the plan was one designed to defeat the payment of taxes. In such a case it would be just as subject to condemnation as was the fictitious transfer of assets by one corporation to another, and thence to the sole stockholder, which, though accomplished in strict conformity with the statute, the Supreme Court denounced in Gregory v. Helvering, 55 S. Ct. 266, 79 L. Ed. — (January 7, 1935).

But here there is not a suspicious circumstance suggesting that what was done was a sham. The sale on the one hand, and the exchange on the other, stand on the admitted facts separate and apart; and as the Supreme Court has said, and as we also have said time and again, in such circumstances the correct rule is to give effect to what actually was done, for that, after all, is the test.

Reversed.