## PEIR v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8533.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1938.

A. Calder Mackay, of Los Angeles, Cal. (Thomas R. Dempsey, Howard W. Reynolds, and Arthur McGregor, all of Los Angeles, Cal., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch, F. E. Youngman, and Ellis N. Slack, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals.

The facts are as follows: The Western Oxygen Company, a corporation, held a special stockholders' meeting of March 6, 1929, and ratified a contract previously entered into with the Air Reduction Company, a corporation. For convenience we herein drop the word "Company" from the names of the two corporations. The Board found as a fact that this contract "contemplated the acquisition by the latter [Air Reduction] of the assets of the former [Western Oxygen] in exchange for shares of capital stock of the latter, and the assumption by the latter of the liabilities of the former and the distribution to the stockholders of the Oxygen Company of the shares of stock thus to be acquired by it in the Air Reduction Company."

Although the contract is not before us, the Commissioner concedes in his brief that the dissolution of Western Oxygen was a part of the plan, quoting: "Upon receipt of the Air Reduction Company stock the Oxygen Company took steps to dissolve *in accordance with its agreement.*" (Italics mine.)

This contract was consummated, the Oxygen assets were transferred, and 16,000 shares of Air Reduction were transferred to Oxygen Company.

On the day the contract was ratified the president of Western Oxygen informed a special directors' meeting of his company that a holder of preferred stock of the company refused to accept Air Reduction stock in exchange for his stock.

Resolutions were thereupon adopted calling all of the preferred stock at $105 per share, plus dividends, and authorizing the sale of a sufficient quantity of Air Reduction stock to pay therefor.

At the same time Western Oxygen authorized the transfer of 342 shares of Air Reduction stock, received or to be received in the exchange, to A. H. Peir, its president, "as a commission for consummating the contract whereby the Air Reduction Company was to acquire the assets of the Oxygen Company and as a reward for his activities in connection with the Oxygen Company and in appreciation for his loyalty to it."

In order to raise the money with which to retire the preferred stock and to put itself into a condition for dissolution, Western

Oxygen sold 1,811 shares of Air Reduction stock during 1929 for $184,922.61. This sum was wholly used for this purpose. It also transferred the 342 shares of Air Reduction stock to Peir, and the 14,189 shares of Air Reduction stock remaining were distributed pro rata to Westen Oxygen common stockholders.

In the same year (1929) Western Oxygen paid $1,500 to an attorney "for handling the local affairs of the Company, dissolving it and handling the redistribution of its stock in Air Reduction Company to the stockholders of the Oxygen Company."

For 1929 Western Oxygen reported in its tax return a net loss of $42,318.79. It apparently reported no profit from sale of Air Reduction stock made to pay the preferred stockholders, and took deductions for the $1,500 attorney fee and $36,765, the value of the stock transferred to Peir. Western Oxygen was dissolved during the year 1929.

The Commissioner determined that the Western Oxygen had realized a taxable profit of $150,204.22 upon the sale of the Air Reduction stock and added it to the Western Oxygen Company's gross income, disallowed the deductions for attorney's fees and "commissions," and determined a deficiency of $14,976.55. A deficiency notice to that effect was issued October 11, 1930, to Western Oxygen.

At that date Western Oxygen had distributed all of its assets, and the deficiency remaining unpaid, on April 4, 1931, the Commissioner issued a deficiency notice to Air Reduction wherein he proposed under section 311 of the Act of 1928, 26 U.S.C.A. § 311 and note, a deficiency in tax in the amount of $14,976.55 against that company as transferee. Air Reduction did not petition the Board to redetermine the deficiency and the deficiency, having been assessed, was paid by Air Reduction in March, 1932, under protest and with a claim for refund which was based upon the ground that it was a purchaser for value of Western Oxygen Company's assets and, therefore, not liable as transferee.

At the time of issuing the transferee deficiency notice against Air Reduction, the Commissioner issued like notices against petitioner and others. These others (whose proceedings before the Board were consolidated with those of Peir) are in the same situation as Peir so far as the problems of this review are concerned and have stipulated to submit their cases with Peir's case and upon the same briefs and argument and to abide the final decision in this case.

As petitioner has done in his brief, we shall first consider whether or not the payment under protest of the tax by Air Reduction discharges the transferee liability of petitioner, if there is in fact such a liability. We think it does not. The payment was a conditional one and does not act as a discharge until the conditions are resolved against the taxpayer. No question of liability of Air Reduction for payment of the tax is before this court. It may, or may not, be legally liable, but until it has paid the tax and such payment is final and unconditional, the tax remains unpaid in so far as the rights of the others who may be liable are concerned.

We agree with the Board's statement in its opinion that: "The Commissioner can not, by voluntarily refunding to the Air Reduction Co., release it and fix the liability upon the others; nor can he by withholding refund to the Air Reduction establish its final liability and discharge the others." The payment has been made subject, however, to the legal liability of the payor. If after the proper legal test has been made the payor's liability has been established, the payment will lose its conditional status and become absolute. Should such test determine that the payor was without liability, the situation will be exactly as though the payment had not been made. As was said in U. S. v. Board of Commissioners of Comanche County, Okl.D.C., 6 F.Supp. 401, 403: "Where taxes are paid under protest, the collecting authority can only hold them in trust."

We agree with the Board in holding that the tax has not been so paid as to bar the Commissioner from proceeding against petitioner for its collection.

Next is challenged the Commissioner's determination that the sale of Air Reduction stock for funds with which to pay off the preferred stockholders could be considered in arriving at a taxable income of Western Oxygen.

In the consideration of this question it should first be understood that respondent concedes that no gain or loss was recognized to Western Oxygen upon the exchange of all its assets for 16,000 shares of Air Reduction stock. Section 112(b) (4) of the Revenue Act of 1928, 26 U.S.C.A. § 112(b) (4) and note. But respondent does not admit that the sale by Western Oxygen of a

portion of the shares of Air Reduction so received in order to carry out the dissolution was a nontaxable transaction.

Petitioner's contention, while not altogether clear, seems to be that since the "plan of reorganization" contemplated distribution of the Air Reduction shares pro rata to the Western Oxygen shareholders and dissolution of that company (which distribution would be a nontaxable transaction), and since it became necessary to sell shares of Air Reduction in order to buy up the preferred shares of Western Oxygen and thus effectuate the "planned" dissolution, that consequently the sale of stock (ordinarily a taxable transaction) should be treated as merely an incident to the reorganization and part of the "plan" thereof and so non-taxable. At times petitioner bases his argument on the provisions of section 112(d) of the Revenue Act of 1928, 26 U.S.C.A. § 112(d) and note, and at other times on those of section 112 (b) (3) of the same act, 26 U.S.C.A. § 112 (b) (3) and note.

Pertinent provisions of section 112, 26 U.S.C.A. § 112 and note are as follows:

"*Recognition of gain or loss.*

"(a) *General Rule.* Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) *Exchanges solely in kind*—* * *

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) Same—Gain of corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. * * *

"(c) *Gain form exchanges not solely in kind*—

"(1) If an exchange would be within the provisions of subsections (b)(1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if

any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. * * *

"(d) *Same—Gain of corporation.* If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

"(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

"(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed."

An examination of the foregoing provisions reveals that on no theory can the stock sale in question be so brought within them as to be considered nontaxable. The sale transaction does not fall within section 112 (b) (3), 26 U.S.C.A. § 112 (b) (3) and note for preferred stock was exchanged for *money* and not for *stock* in so far as the deal between Western Oxygen and its preferred stockholders is concerned. And "property" other than stock was exchanged by Western Oxygen for the stock of Air Reduction.

Nor is it any aid to petitioner to invoke the provisions of section 112 (d), 26 U.S.C.A. § 112 (d) and note, for that subsection by its terms is dependent upon section 112 (b) (4), 26 U.S.C.A. § 112 (b) (4) and note, and when construed with it makes the distribution by a corporation of the receipts of an exchange nontaxable only when a *corporation* has exchanged property for stock, *plus* other property or money. Here Western Oxygen exchanged property only for stock—having received the stock, it then proceeded to translate a portion of it into money and distribute the remaining stock and the money thus gained to its shareholders. No provision of the section provides that the sale of a portion of the stock received tax free by a corporation under section 112 (b) (4) is a nontaxable transaction because the proceeds on a sale thereof are distributed to its stockholders—the distribution

of money pursuant to a plan of reorganization is tax free only when the money (together with stock) thus distributed has been *received* from another corporate party to the reorganization.

It is evident that if we were to hold that the translation of a portion of the stock received by Western Oxygen into money and the distribution of the money and the remaining stock to its shareholders was the *same in legal effect* as if Western Oxygen had distributed stock and money *received* by it from Air Reduction, the result would be that, although there had been a transformation of stock into money, neither of the corporations involved could be held to have made a stock sale subject to scrutiny for gain or loss, whereas if the stock sale had been consummated by the transferor prior to the transfer the gain or loss resulting to it on such sale would, so far as appears from the record, have been required to be reflected in its income.[1]

It thus appears that though in other connections the practical effect of a transaction such as that in question may not be different than where money is paid to the transferee and then distributed by it, that in the purview of the taxing act the variance from the prescribed course, if disregarded, makes possible non-taxable transmutations of stock into cash which transmutations if otherwise accomplished would be taxable. It would not, we think, be argued that if the parties had incorporated in their plan a provision that Air Reduction was to sell a given amount of its stock and then transfer the proceeds of such sale, together with other shares, to Western Oxygen in exchange for the assets of the latter company, that Air Reduction could not be taxed on the gain on such sale because the sale was made in accordance with an agreed plan of reorganization. The fact that the sale here in question has occurred at the opposite end of the exchange does not make petitioner's position any more tenable than would be that of Air Reduction if it sought to escape tax in the supposed case.

Western Oxygen had a duty under the reorganization agreement, yet unperformed. The manner of its accomplishment was no concern of Air Reduction. The original plan of distributing Air Reduction stock pro rata for its own and thus making dissolution possible failed and it adopted the plan of selling part of the Air Reduction stock and using the proceeds to buy in a class of its shares. It seems to us that this sale made by Oxygen Company in order to comply fully with its agreement, though made to carry out the reorganization, was not a nontaxable phase of that reorganization in contemplation of the pertinent section of the Revenue Act, but was rather separate and distinct from the other steps taken under the agreement and by section 112 made tax free, 26 U.S.C.A. § 112 and note. Cf: Helvering v. Tex-Penn. Oil Co., 300 U.S. 481, 483, 491, 495, 497, 57 S.Ct. 569, 570, 573, 575, 576, 81 L.Ed. 755; U. S. v. Galveston-Houston Electric Co., 1 Cir., 1936, 84 F.2d 516, certiorari denied, 299 U.S. 590, 57 S.Ct. 117, 81 L.Ed. 435; Bruce v. Helvering, 1935, 64 App.D.C. 192, 76 F.2d 442.

We next consider whether the Board of Tax Appeals erred in holding that Western Oxygen was not entitled to take as a deduction in the determination of its net taxable income for the year 1929, the sum of $1,500 paid to its attorney, and also the sum of $36,765 paid to its president, A. H. Peir. The deductions were claimed under section 23(a) of the Revenue Act of 1928, 26 U.S.C.

---

[1] Art. 22 (a)-16, Reg. 94,86 provides as follows:

"Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Act."

It does not appear whether the capital stock of Air Reduction given in exchange for Western Oxygen's assets had previously been issued.

A. § 23(a) and note which reads as follows:

"In computing net income there shall be allowed as deductions:

"(a) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered."

The Board of Tax Appeals having made a finding as to the nature of the services for which these payments were made, and having determined against their deductibility, our function is limited to deciding whether the correct rule of law was applied to the facts found; and whether there was substantial evidence before the Board to support the findings made. Helvering v. Ward, 8 Cir., 1935, 79 F.2d 381, 383. Since in the present case none of the evidence before the Board is in the record here, there is no basis for determining that a finding of fact by the Board was not supported by substantial evidence and the finding must be accepted. Helvering v. Ward, supra, 8 Cir., 79 F.2d 381, at page 383. We think that the decision properly applied the law to the facts found. As said in Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212: "Unless we can say from facts within our knowledge that these are *ordinary* and *necessary* expenses according to the ways of conduct and the forms of speech prevailing in the business world, the tax must be confirmed. But nothing told us by this record or within the sphere of our judicial notice permits us to give that extension to what is ordinary and necessary." (Italics added.) In consequence the presumption in favor of the ruling of the Commissioner prevails. Buck v. Commissioner, 9 Cir., 1936, 83 F.2d 786, and cases cited.

HANEY, Circuit Judge (concurring).

Review of a decision of the Board of Tax Appeals that "petitioners are jointly and severally liable as transferees * * * for a deficiency of $14,976.55 in the income tax" of Western Oxygen Company for 1929, is sought by the petition before us.

Petitioners were, at the material times herein, stockholders of the Western Oxygen Company, hereinafter called Western Oxygen, a Delaware corporation, which had both common and preferred stock outstanding. The Board found: "* * * The preferred stock was redeemable on any dividend date at $105 per share plus all accum-

ulated and unpaid dividends thereon. In the event of dissolution of the company holders of the preferred stock were entitled to receive par value or $100 per share plus all accumulated and unpaid dividends thereon before any assets should be applied to the common stock."

Prior to March 6, 1929, Western Oxygen entered into a contract with Air Reduction Company, a New York corporation, hereinafter called Air Reduction. By that contract, Air Reduction agreed to transfer to Western Oxygen 16,000 shares of the stock of Air Reduction, and to assume and pay obligations of Western Oxygen set forth in two schedules, and obligations "incurred or assumed by it in the regular conduct of its business since December 31, 1928." Western Oxygen agreed to transfer its assets to Air Reduction, and upon delivery thereof to enter into an agreement with Air Reduction, agreeing to indemnify Air Reduction against all claims against Western Oxygen including state and federal taxes, except those set forth in the schedules. The schedules contained no reference to federal taxes for the year 1929.

It was either provided in such agreement, or was a part of Western Oxygen's reorganization plan that the stock received by it in Air Reduction would be distributed to Western Oxygen's stockholders.

A special meeting of Western Oxygen's stockholders was called for the purpose of considering the reorganization, and was held on March 6, 1929. The stockholders ratified and approved the contract. On the same day a special meeting of the directors of Western Oxygen was held. Because a preferred stockholder had refused to accept Air Reduction stock for his Western Oxygen preferred stock, a resolution was adopted calling for redemption on May 31, 1929, all Western Oxygen preferred stock at $105 per share plus accrued dividends. Another resolution was adopted authorizing sale of a sufficient quantity of Air Reduction stock to redeem the preferred stock. In addition, another resolution was adopted authorizing transfer to petitioner Peir, the president of Western Oxygen of 342 shares of Air Reduction stock "as a commission for consummating the contract * * * and as a reward for his activities in connection with [Western Oxygen] and in appreciation for his loyalty to it."

On March 28, 1929, Western Oxygen transferred its assets, the depreciated cost of which was $393,582.45, to Air Reduction,

648 `

and received therefor 16,000 shares of Air Reduction stock, the market value of which at the time of the transfer is not disclosed by the record.

Thereafter, Western Oxygen sold 1,811 shares of Air Reduction stock, receiving therefor $184,922.61, all of which was used in redeeming the preferred stock; it transferred the 342 shares of Air Reduction stock to Peir, the value of the stock at the time of the transfer being $107.50 per share, or a total value of $36,765; it paid an attorney $1500 "for his services in handling the local affairs of [Western Oxygen], dissolving it and handling the distribution of" Air Reduction stock; and it distributed the remaining 13,847 shares of Air Reduction stock to Western Oxygen's common stockholders. All those "transactions were in liquidation of the capital stock of [Western Oxygen], which liquidation and dissolution was completed in 1929."

In its income tax return for the year 1929, Western Oxygen reported no profit from the sale of 1,811 shares of Air Reduction stock, claimed a deduction for the $1,500 attorney's fee, and the $36,765 paid Peir. Respondent audited the return, disallowed the two deductions mentioned, adjusted the income to include $140,204.22 as profit on the sale of the 1811 shares of Air Reduction stock, and determined a deficiency in the tax owing by Western Oxygen in the sum of $14,976.55. He assessed the deficiency on October 11, 1930, and issued notice thereof to Western Oxygen on October 27, 1930.

Payment of the deficiency was not made prior to April 4, 1931. On that day respondent issued a deficiency notice to Air Reduction and to petitioners, seeking to recover from Air Reduction under section 311 of the Revenue Act of 1928, 26 U.S.C.A. § 311 and note which provides in part: "(a) * * * The amounts of the following liabilities shall * * * be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title. * * * (1) * * * The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer by this title [chapter]."

Thereafter petitioners filed a petition with the Board of Tax Appeals for a redetermination of the deficiency. Air Reduction, however, did not file such a petition, and respondent assessed it for the deficiency.

In March, 1932, Air Reduction paid under protest the amount of the deficiency, and at the same time submitted a claim for refund, contending that it was "a purchaser for value" and therefore was not liable as a "transferee."

On December 5, 1935, the Board held that the deficiency could be collected only once, and since it had been collected "the liability of the petitioners was extinguished." On February 19, 1936, respondent filed a motion with the Board to reconsider the decision, and to submit evidence that "refund of the full amount of the payment made by Air Reduction * * * has been authorized and is in course of transmission to * * * Air Reduction. * * *" The Board vacated its decision, and on reconsideration of the proceeding, rejected the evidence offered, and held that the payment made "under protest and accompanied by a claim for refund, does not serve to discharge any liability which these petitioners have." The Board also approved respondent's determination without explanation. Petitioners have filed a petition to review that decision.

Petitioners first contend that if there was any tax liability it was extinguished and discharged by the Air Reduction payment.

The "trust-fund" doctrine, partially noticed in Mumma v. Potomac Company, 33 U.S. 281, 286, 8 Pet. 281, 286, 8 L.Ed. 945, was stated in Curran v. State of Arkansas, 56 U.S. 304, 15 How. 304, 307, 14 L.Ed. 705. The assets of an insolvent corporation are impressed with a trust in favor of such corporation's creditors, who may enforce such trust on such assets against anyone having possession thereof, except bona fide creditors or purchasers. That principle may be invoked by the government with respect to unpaid corporate taxes. Phillips v. Commissioner, 283 U.S. 589, 592, 51 S.Ct. 608, 609, 75 L.Ed. 1289; Hulburd v. Commissioner, 296 U.S. 300, 303, 56 S.Ct. 197, 199, 80 L.Ed. 242; Phillips-Jones Corp. v. Parmley, 302 U.S. 233, 235, 236, 58 S.Ct. 197, 82 L.Ed. ——. The liability of each of the transferees, and the corporation, is said to be several (Phillips v. Commissioner, supra, 283 U.S. 589, 603, 51 S.Ct. 608, 614, 75 L.Ed. 1289; Phillips-Jones Corp. v. Parmley, supra, 302 U.S. 233, 237, 58 S.Ct. 197, 82 L.Ed. ——), but it is also joint, since the government may pursue all of them, or only one. Phillips v. Commissioner, supra, 283 U.S. 589, 603, 51 S.Ct. 608, 614, 75 L.Ed. 1289;

Phillips-Jones Corp. v. Parmley, supra, 302 U.S. 233, 236, 237, 58 S.Ct. 197, 82 L.Ed. ——. Since the liability is joint and several, payment by one so liable would discharge all who were jointly and severally liable with him. Phillips-Jones Corp. v. Parmley, supra, 302 U.S. 233, 237, 58 S.Ct. 197, 82 L.Ed. ——.

The payment by Air Reduction would discharge petitioners if both Air Reduction and petitioners were jointly and severally liable. The Board in its last opinion said: "Thus it would appear that * * * Air Reduction * * * was a purchaser for value, with no liability either at law or in equity for the payment of such tax." Ordinarily, the burden of proving discharge is on the one asserting it. Whether that rule as applicable here, was changed by section 912 of the Revenue Act of 1924, as added by section 602 of Act of 1928, 26 U.S.C.A. § 619(a), it is unnecessary to decide. That section provides: "In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax." Under the facts as found by the Board, we see no basis on which Air Reduction might be liable with petitioners under the "trust-fund" rule. While it was a "transferee" in one sense, it was not a "transferee" liable under the "trust-fund" rule. Its stock which it transferred to Western Oxygen being of a ready market value and, based on the value of that which was sold, far exceeded the cost of the assets transferred to it by Western Oxygen. As a purchaser for value, Air Reduction, we think, was not liable.

The payment by Air Reduction is in the same category as a payment by a stranger. It would not discharge the liability unless such was the intention of the government and Air Reduction. Adams v. Napa Cantina Wineries, 9 Cir., 94 F.2d 694, 699. Here, no such intention on behalf of the government is shown. In fact, it is shown that there was a contrary intention, because respondent is still pursuing petitioners before us.

Petitioners assert that this court has held that section 311 of the act, 26 U.S.C.A. § 311 and note, "does not by its terms exclude transferees who have paid full consideration for the property transferred." California Iron Yards Corp. v. Commissioner, 9 Cir., 82 F.2d 776, 779. In fact, however, such question was expressly left undecided.

(at page 779 of 82 F.2d). In addition, liability of Air Reduction would not arise from the statute or the assessment thereunder, but from the "trust-fund" doctrine. Phillips-Jones Corp. v. Parmley, supra, 302 U.S. 233, 235, 58 S.Ct. 197, 82 L.Ed. ——. Petitioner further contends that Air Reduction was liable because it had assumed Western Oxygen's obligations. The facts found do not sustain the contention, but even if they did, the "existence of that possible remedy did not bar the government from following * * * the assets of the corporation into the stockholder's hands." Pierce v. United States, 255 U.S. 398, 405, 41 S.Ct. 365, 368, 65 L.Ed. 697.

One further question pertaining to election of remedies should be noticed. The right of the government, under the "trust-fund" theory, in the absence of statute, could be asserted either by an action at law (Phillips v. Commissioner, supra, 283 U.S. 589, 592, 51 S.Ct. 608, 609, 75 L.Ed. 1289; Hulburd v. Commissioner, supra, 296 U.S. 300, 303, 56 S.Ct. 197, 199, 80 L.Ed. 242), or by suit in equity. Id.; Leighton v. United States, 289 U.S. 506, 509, 53 S.Ct. 719, 720, 77 L.Ed. 1350. By section 311, above quoted, a third remedy was extended to the government by way of summary proceeding. Phillips v. Commissioner, supra, 283 U.S. 589, 594, 51 S.Ct. 608, 610, 75 L.Ed. 1289; Hulburd v. Commissioner, supra, 296 U.S. 300, 303, 56 S.Ct. 197, 199, 80 L.Ed. 242; Phillips-Jones Corp. v. Parmley, supra, 302 U.S. 233, 237, 58 S.Ct. 197, 82 L.Ed. ——. However, the other remedies continue also. Leighton v. United States, supra, 289 U.S. 506, 509, 53 S.Ct. 719, 720, 77 L.Ed. 1350; Phillips-Jones Corp. v. Parmley, supra, 302 U.S. 233, 237, 58 S.Ct. 197, 82 L.Ed. ——. The fact that respondent proceeded against Air Reduction did not, we think, amount to an election of remedies preventing assertion of the remedy against petitioners. Pierce v. United States, supra, 255 U.S. 398, 405, 41 S.Ct. 365, 367, 65 L.Ed. 697.

Section 22(a) of the Revenue Act of 1928, 26 U.S.C.A. § 22(a) and note, provides in part: " 'Gross income' includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property."

Section 22(e), 26 U.S.C.A. § 22(e) note, provides: "In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in sections 111, 112, and 113."

In computing the amount of the gain, which by section 111 (a), 26 U.S.C.A. § 111 note, is "the excess of the amount realized therefrom over the adjusted basis provided in section 113(b)," the amount realized is "the sum of any money received plus the fair market value of the [other] property * * * received," section 111 (c), 26 U.S.C.A. § 111 (b) and note, and the basis provided in section 113 is "the last inventory value" of the property disposed of. Section 113(a) (1), 26 U.S.C.A. § 113 note.

Here Western Oxygen's property was inventoried at $393,582.45, after deducting depreciation. The gain would be the fair market value of Air Reduction stock received, less $393,582.45, and it would be taxable, were it not for section 112(b) (4), 26 U.S.C.A. § 112(b) (4) and note, which provides: "No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

The gain was not therefore taxable to Western Oxygen.

Inasmuch as Western Oxygen then exchanged the stock it received from Air Reduction for its own stock, the gain, so far as the stockholders of Western Oxygen who received Air Reduction stock were concerned, was not taxable because of section 112 (b) (3), 26 U.S.C.A. § 112(b) (3) and note, which provides: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

With respect to the preferred stockholders, however, they received no distribution of Air Reduction stock but money obtained from sale of such stock by Western Oxygen. Petitioners contend that section 112 (d), 26 U.S.C.A. § 112(d) and note, is applicable, which provides: "If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange."

I believe this section means that if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization for stock or securities in another corporation a party to the reorganization, and money, and distributes such money in pursuance of the plan of reorganization, then no gain to the corporation shall be recognized. If the plan of reorganization contemplated exchange of assets for stock only, and not the sale, then the profit on the sale is taxable, because the transaction would not come within the statute. On the other hand, if the plan of reorganization actually contemplated exchange of assets for stock and sale of part of the stock for distribution to stockholders, I believe it would make no difference whether the stock was sold by the transferor, the transferee, or a third person not a party to the reorganization on behalf of either or both. In other words, it is the substance of what was done which is controlling. Actually, if the plan of reorganization contemplated receipt by the stockholders of stock and money, I believe that to be the substance of the transaction. Had the stock been sold by Air Reduction and the proceeds received by Western Oxygen with the remainder of the stock, then under the express terms of section 112(d) (1), 26 U.S.C.A. § 112(d) (1) and note, Western Oxygen would not have been liable for the tax. See Minnesota Tea Co. v. Helvering, 58 S.Ct. 393, 82 L.Ed. ——, January 17, 1938. If, actually, the plan contemplated sale of stock and distribution of the money to the stockholder, I think that, however the transaction was carried out, was a mere incident—a matter of form which should be disregarded. Cf. Minnesota Tea Co. v. Helvering, supra; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Pinellas Ice Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428.

The Board has made no finding as to what the plan actually was. It finds what the contract between Western Oxygen and Air Reduction "contemplated" but not what the plan was. The contract itself probably would not express the "plan" because the plan would undoubtedly have many details about which Air Reduction would not be interested. The contract would be a part of the execution of the plan, but not the plan. I see nothing to prevent modification of the original plan prior to transfer of the assets, as here.

However, if we assume that the plan contemplated receipt of stock and money by the common stockholders 'and holders of preferred stock respectively, I think that the distribution was not to stockholders but to creditors, and that therefore Western Oxygen was taxable for the gain realized under Minnesota Tea Co. v. Helvering, supra.

The relation between both common and preferred stockholders and the corporation is described in Elko Lamoille Power Co. v. Commissioner, 9 Cir., 50 F.2d 595, 596, and as there said, ordinarily a "preferred stockholder is not a creditor of the company." See, also, 11 Fletcher Cyclopedia Corporations, Perm.Ed., 708 § 5290.

The question before us is rather limited in scope. There is here no conflict between the preferred stockholders and general creditors prior to issuance of notice of redemption, where ordinarily the preferred stockholder is not a creditor as against the general. Cf. Armstrong v. Union Trust & Savings Bank, 9 Cir., 248 F. 268. Likewise, we need make no choice between provisions regarding redemption, and provisions regarding preference on liquidation, where both are invoked. See Vanden Bosch v. Michigan Trust Co., 6 Cir., 35 F.2d 643; Mathews v. Bradford, 6 Cir., 70 F.2d 77; 28 Mich.L. Rev. 764, 765; cf. In re Culbertson's, 9 Cir., 54 F.2d 753. Finally, there is here no claim of fraud by the redemption as to either general creditors or stockholders.

The contract to which the preferred stockholders became a party, provided[1] that the "preferred stock was redeemable on any dividend date" as found by the Board. As a part of such contract, Western Oxygen could by its notice, exercise the option, and thereby become indebted to the preferred stockholders for the amount provided in the contract. It was not an option to purchase the stock, but an option to reduce its capital by retiring the stock. I think that upon notice of acceptance of the option, the preferred stockholders became creditors.

There are, I think, several analogous situations. Upon declaration of a dividend by a corporation, the stockholder becomes a creditor. Commissioner v. Scatena, 9 Cir., 85 F.2d 729, 731. One holding a policy on the life of a third person, in a mutual company, prior to the death of the third person, is ordinarily considered the same as a stockholder in a corporation, 37 C.J. 370, § 21, but after the death he becomes a creditor. Closer analogies are found in cases where preferred stock is redeemable at the option of either the corporation or stockholder, and general creditors' rights are not involved. Westerfield-Boute Co. v. Burnett, 176 Ky. 188, 195 S.W. 477; F. T. Gunther Grocery Co. v. Hazel, 179 Ky. 775, 201 S.W. 336; compare Vent v. Duluth Coffee & Spice Co., 64 Minn. 307, 67 N.W. 70. Finally, there are the cases where the preferred stock is issued under a provision that it is redeemable at a fixed date. When such date arrives, the holder becomes a creditor. Savannah Real Estate, Loan & Bldg. Co. v. Silverberg, 108 Ga. 281, 33 S.E. 908; Allen v. Northwestern Mfg. Co., 189 Iowa 731, 179 N.W. 130; Burt v. Rattle, 31 Ohio St. 116; Best v. Oklahoma Mill Co., 124 Okl. 135, 253 P. 1005; Keyes v. Blue Bell Medicine Co., 34 S.D. 297, 148 N.W. 505.[2] I do not believe that, because it is left to the directors to fix the date of redemption, there is any distinction, since once the date is fixed, the relation is the same.[3]

Therefore, since the preferred stockholders were creditors at the time of distribution of the proceeds, the rule in Minnesota Tea Co. v. Helvering, supra, is applicable.

The judgment should be affirmed.

[1] I think the Board's finding, although inaptly stated, is to that effect. Actually, the certificate, charter or articles of association, by-laws, resolutions under which the stock was issued, and applicable statutes are to be consulted in determining what the contractual rights of the holders of preferred stock are. Continental Ins. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co., 8 Cir., 290 F. 87, 91, 31 A.L.R. 1320; 11 Fletcher, supra, 718, 727, §§ 5294, 5295; Jones, Redeemable Corporate Securities, 5 So.Cal.L. Rev. 83.

[2] Compare Cring v. Sheller Wood Rim Mfg. Co., 98 Ind.App. 310, 183 N.E. 674; Crimmins & Peirce Co. v. Kidder Peabody Accept. Corp., 282 Mass. 367, 185 N.E. 383, 88 A.L.R. 1122; Ammon v. Cushman Motor Works, 128 Neb. 357, 258 N.W. 649; Koeppler v. Crocker Chair Co., 200 Wis. 476, 288 N.W. 130.

[3] On the general proposition, see Jones, Redeemable Corporate Securities, 5 So. Cal.L.Rev. 83, 97; 28 Mich.L.Rev. 764, 765.