ROOSEVELT HOTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13030. Promulgated September 28, 1949.

*Dana Latham, Esq.*, and *Austin H. Peck, Jr., Esq.*, for the petitioner. *E. A. Tonjes, Esq.*, for the respondent.

## OPINION.

Arnold, *Judge*: The first issue is whether petitioner is entitled to use, for computing depreciation and equity invested capital, the basis of certain assets in the hands of the preceding owner, the Hotel Holding Co. of Hollywood, Ltd.

Under section 113 (a) (7) of the Internal Revenue Code,[1] if property was acquired in 1935 by a corporation in connection with a reorganization and immediately after the transfer an interest or control in such property of 50 per cent or more remained in the same persons or any of them, the basis shall be the same as it would be in the hands of the transferor, with certain adjustments. Section 112 (g) defines "reorganization" as including "the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded."

Petitioner contends that it acquired the property from Hotel Holding Co. in a reorganization solely for voting stock, and therefore is entitled to use that predecessor's basis.

Respondent contends (1) that the transfer of the property from Hotel Holding Co. to the petitioner was not pursuant to a plan of

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(7) TRANSFERS TO CORPORATIONS.—If the property was acquired—

(A) after December 31, 1917, and in a taxable year beginning before January 1, 1936, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, \* \* \*

\* \* \* \* \* \*

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. \* \* \*

reorganization and (2) that the properties were acquired by petitioner not "solely for voting stock," but for voting stock and cash.

Respondent argues that no plan existed on May 1, 1931; that the intent of the committee at that time was to liquidate rather than to reorganize; that a plan, to qualify as a plan of reorganization, must provide for a continuation of the business, rather than liquidation; that the plan to form a new corporation was not made until four years after the trustee took control and, hence, the petitioner did not acquire the property from Hotel Holding Co. pursuant to a plan of reorganization, but acquired it from the committee which had held it for four years without a plan.

In February 1942 the Supreme Court decided four cases relating to the reorganization provisions of the Internal Revenue Code. In *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179, the Court held that a reorganization occurred when the creditors of a corporation formed a new corporation, and acquired the assets for it at a judicial sale, excluding the former stockholders, the new corporation being entitled to use the predecessor's basis for purposes of depreciation and depletion. In *Palm Springs Holding Corporation* v. *Commissioner*, 315 U. S. 185, the same conclusion was reached. In the other two cases the Court held that a reorganization did not occur—in *Bondholders' Committee, Marlborough Investment Co. First Mortgage Bonds* v. *Commissioner*, 315 U. S. 189, because the property had been acquired from persons other than the defaulting corporation, and the transaction was a purchase rather than a reorganization; and in *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194, because the property was not acquired "solely for voting stock" within the requirements of the statute.

It is clear from these cases that where the holders of a corporation's bonds, having through default become the beneficial owners of its assets, form a new corporation in which they are stockholders and cause the assets to be transferred to it, a reorganization occurs if the other statutory requirements are met. The continuity of interest essential to qualify the transaction as a reorganization exists. Here, well over 90 per cent of the bonds were deposited and their owners participated in the new corporation.

It is not material that at the time the trustee took possession of the property to protect the bondholders' interests there was no plan of reorganization, or that the committee considered other means of best realizing on the defaulted bonds. There is no statutory requirement that a plan be immediately adopted, and to require this would disqualify as reorganizations many of the financial readjustments Congress intended to have included. It is inevitable that there be some delay in arriving at a solution satisfactory to the great majority of

interested bondholders or creditors. In *Helvering* v. *Southwest Consolidated Corporation, supra,* the plan was not adopted until eighteen months after the bondholders' committee took control, but the Supreme Court said that there would have been a reorganization except for the requirement that the property be acquired solely for voting stock. The absence of a plan at the time the committee took control was not discussed. In the cited cases the Court expressed the view that the "legal procedure employed by the creditors is not material" (*Palm Springs Holding Corporation, supra*) and the "precise mechanics whereby the reorganization was consummated are not material" (*Bondholders' Committee, supra*). The form in which the transaction was finally cast is controlling, not what the interested lienholders may have considered as an alternative. The bondholders' committee here adopted a plan by 1935, pursuant to which it caused petitioner to be incorporated, purchased the property at the trustee's sale held under the trust indenture executed by the Holding Co. to secure payment of the bonds, and had the trustee convey the property directly to petitioner. We conclude that petitioner acquired the property pursuant to a plan of reorganization.

Respondent cites *United States* v. *Santa Inez Co.*, 145 Fed. (2d) 667, where the Circuit Court of Appeals for the Ninth Circuit held that there were two separate transactions where there was a foreclosure sale for the benefit of bondholders and stock in a new corporation was later issued to the bondholders and that gain resulted from the first transaction. Respondent argues that here there were two separate transactions, that in the first the bondholders' committee acquired the property in 1931, and hence the committee, rather than the Hotel Holding Co. was the transferor to petitioner. On this point we think the *Alabama Asphaltic Limestone Co.* case, *supra*, is controlling. There, as here, the committee bid in the assets and transferred the property to a corporation subsequently organized. The Supreme Court held the separate steps were integrated parts of a single plan. Here the committee was never the owner. There was no realizing transaction in 1931. The trustee acquired possession of the property for the bondholders in 1931 and retained possession until the sale in 1935, but its possession was under the provisions of the deed of trust, and not as owner. In 1935, upon the sale under the deed of trust, title passed from the Holding Co. to petitioner. There was no intervening owner, as in the *Bondholders' Committee* case, *supra*.

Respondent's second argument is that petitioner did not acquire the property of Hotel Holding Co. solely for voting stock, but for voting stock and cash. The petitioner borrowed $300,000, which, with $32,672.24 held by the trustee for the account of Hotel Holding Co., was placed in escrow to be used for payment of certain obligations,

including $11,529.75 reserved for payment of claims of the nonassenting bondholders. Respondent says the case is governed by *Helvering* v. *Southwest Consolidated Corporation, supra,* in which the committee borrowed $106,680 from a bank to pay off the nonassenting bondholders, the Supreme Court concluding that the corporation used cash, as well as voting stock, to effect the purchase of the property.

Since these decisions of the Supreme Court we have had occasion to construe and apply them in a number of reorganization cases. In *Southland Ice Co.,* 5 T. C. 842, certain cash held by the transferor was used to pay the nonassenting bondholders. We concluded that the new corporation acquired "solely for voting stock" substantially all the assets of the transferor, some assets of the transferor having been used to satisfy the claims of nonassenting bondholders. A similar conclusion was reached in *Westfir Lumber Co.,* 7 T. C. 1014. In that case we pointed out that no interest was purchased for new cash obtained through borrowing, through the sale of stock, or through any other transaction with a third party. In *Peabody Hotel Co.,* 7 T. C. 600, we concluded that the new corporation acquired substantially all the property of a predecessor for a part of its voting stock and the assumption of liabilities of the predecessor. Included in the liabilities assumed were accrued real estate taxes, liabilities incurred by the bankruptcy trustee, and costs of the court proceedings. The taxpayer also sold stock for working capital. See also *Claridge Apartments Co.,* 1 T. C. 163 (affirmed on other issues, 323 U. S. 141), and *New Jersey Mortgage & Title Co.,* 3 T. C. 1277.

These cases point the way to the decision here. At the time petitioner acquired it, the property was subject to various charges such as accrued taxes, claims of the trustee for advances, claims of Thomas E. Hull for repairs and improvements in excess of those he had contracted to make, the claims of the nonassenting bondholders, legal and accounting charges, and expenses of the reorganization, and some funds were needed for operating capital. To the extent necessary to meet the claims of nonassenting bondholders, we may regard a part of the property as set aside for that purpose and not acquired by petitioner. There was cash held by the trustee sufficient for this purpose, if that be deemed necessary. Petitioner acquired the remainder of the property, substantially all the property of Hotel Holding Co., and gave as consideration voting stock and its assumption of the liabilities, save the claims of the bondholders not assenting. Borrowed funds were used to pay the assumed obligations and provide working capital. While this money was borrowed by petitioner concurrently with the acquisition of the property and placed in escrow to pay the liabilities, the result is the same as though petitioner had taken the property subject to the liabilities and later borrowed funds to pay the debts.

The assumption of a liability of the predecessor or the fact that the property is subject to a liability is to be disregarded under the statute.

Respondent contends that the borrowing of funds here brings the case within the scope of *Southwest Consolidated Corporation, supra.* There funds were borrowed to pay the nonassenting bondholders and the Court concluded that cash was used to acquire the property. Here petitioner acquired the property solely for voting stock. The borrowed cash was used for other purposes, the payment of the liabilities assumed, and was not used for the purchase of the interest of the nonassenting bondholders, who received their pro rata shares of the property itself from the trustee, not from petitioner. The cash needed to satisfy their claims was available among the transferor's assets and the petitioner did not furnish it, as in the *Southwest Consolidated* case, *supra.* Although the funds were commingled in the escrow, that is one of the mechanics of the transaction we may regard as immaterial.

We conclude that the transaction was a reorganization and petitioner is entitled to use the basis of the Hotel Holding Co. for the property.

In view of our conclusion on the first issue, it is not necessary that we determine the value of the property on June 13, 1935.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

KERN and MURDOCK, *JJ.*, dissent.