HUBERT E. HOWARD AND HELEN B. HOWARD, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51709–51714, 51830, 52869. Filed July 29, 1955.

[1] Proceedings of the following petitioners are consolidated herewith: John A. Howard, Docket No. 51710; William A. Ruschke and Edna M. Ruschke, Docket No. 51711; George A. Merchant and Maude A. Merchant, Docket No. 51712; Gregory S. Devine and Ursula B. Devine, Docket No. 51713; Rantz E. Snoberger and Elizabeth Snoberger, Docket No. 51714; Clyde W. Woosley and Lois Jane Woosley, Docket No. 51830; Estate of E. J. Coffey, Deceased, Blanche B. Coffey, Edward W. Coffey and William G. Coffey, Co-Executors, and Blanche B. Coffey, Surviving Spouse of E. J. Coffey, Individually, Docket No. 52869.

*William P. Sutter, Esq.*, for the petitioners.

*J. Bruce Donaldson, Esq.*, and *Thomas C. Cravens, Jr., Esq.*, for the respondent.

794

796

### OPINION.

FISHER, *Judge:* Respondent determined that the exchange here in issue is taxable under section 112 (a) of the Internal Revenue Code. Accordingly, he increased the various petitioners' long-term capital gain for 1950 by the difference between their respective bases for the Binkley stock transferred and the fair market value of the Truax-Traer stock received. Shortly after the exchange, petitioners Hubert and Helen Howard sold a portion of the Truax-Traer stock they received in exchange for their Binkley stock. On the basis of his determination that the exchange was a taxable transaction, the respondent computed a new holding period for the Truax-Traer stock sold by the Howards, beginning with the effective date of the exchange, and treated the gain on sale as short-term capital gain. Petitioners contend that their receipt of Truax-Traer stock was upon an exchange of Binkley stock solely for Truax-Traer stock and that such transaction constituted a nontaxable exchange in accordance with section 112 (b) (3).

Section 112 (a) sets forth the general rule that gain realized on the exchange of property is recognized, except as otherwise provided. Section 112 (b) (3) provides that no gain or loss shall be recognized in the case of an exchange of stock or securities in a corporation a party to a reorganization, in pursuance of a plan of reorganization, solely for stock or securities in such corporation or in another corporation a party to the reorganization. For the purposes of this section (as well as certain others) the several types of statutory "reorganizations" are defined in section 112 (g), including in subsection (1) (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of at least 80 per cent of the voting stock and at least 80 per cent of the total number of shares of all other classes of stock of another corporation. (Subsection (1) (C) defining as a reorganization the acquisition by one corporation of substantially all the properties of another corporation also requires that such acquisition be in exchange solely for stock.)

We will first consider petitioners' argument to the effect that the transaction in question was in fact and should be treated as a nontaxable exchange of some Binkley shares for stock of Truax-Traer and a separate sale of other Binkley shares and of Pyramid stock for cash.

Contrary to petitioners' view, we think that the singleness and unity of the transaction in which Truax-Traer acquired Binkley and Pyramid is apparent. The negotiations carried on by Hubert Howard

were obviously so carried on in his capacity as president of Binkley and on behalf of all of the stockholders of Binkley and Pyramid. The one objective of the negotiations was to find a mutually satisfactory formula for the complete acquisition by Truax-Traer of Binkley and Pyramid. Once the terms of consideration were agreed upon they were incorporated into a formal letter of offer, acceptance of every part of which was contemplated by Truax-Traer as a condition of performance. We think it clear that each element and term of the plan and agreement as originated, outlined, and consummated was inseparably interrelated, and designed to accomplish but one purpose, the acquisition by Truax-Traer of both Binkley and Pyramid. Accordingly, there can be no doubt that petitioners did not take part in an exchange of some Binkley stock for stock of Truax-Traer and a separate and unrelated sale of other shares of Binkley stock and of Pyramid stock to Truax-Traer. See *First Seattle Dexter Horton Nat. Bank* v. *Commissioner*, (C. A. 9, 1935) 77 F. 2d 45; *Starr* v. *Commissioner*, (C. A. 4, 1936) 82 F. 2d 964, reversing 31 B. T. A. 671—but cited with approval in *Rena B. Farr*, 24 T. C. 350, and *James G. Murrin*, 24 T. C. 502, followed in principle in *Miller* v. *Commissioner*, (C. A. 6, 1939) 103 F. 2d 58, affirming a Memorandum Opinion of this Court.

Petitioners rely upon several earlier cases, none of which is, in our opinion, here controlling.

The question presented in *Weiss* v. *Stearn*, 265 U. S. 242 (1924), where, upon reincorporation of Acme National Manufacturing Co., the stockholders of the old company received half of the stock of the new corporation plus cash derived from certain new investors, was whether each old stockholder had sold his entire interest in the old corporation or had sold only half of that interest for cash while exchanging the other half for stock and thereby retaining the same proportionate interest in the transferred corporate business. The Court viewed the transaction not as an exchange of stock and cash for the old stock but as a sale of half of the old stock and an exchange of the remainder. The Court held that to the extent that there was an exchange of stock for stock, the economic position of the shareholders was unchanged and therefore that no gain arose from the exchange. It needs only to be pointed out that the question there before the Court did not arise under any such specific statutory provisions defining and limiting tax-free exchanges pursuant to a plan of reorganization as are presently before us. In the taxable years there involved, the statute did not contain any provisions regarding reorganizations. The case therefore has little bearing on the issue presented in these proceedings and is clearly not controlling with respect to the factual question of whether petitioners here separately sold and exchanged portions of their holdings in Binkley and Pyramid.

In *Daisy M. Ward*, 29 B. T. A. 1251, 1254 (1934), affd. (C. A. 8, 1935) 79 F. 2d 381, the transferor exchanged all of his stock for new stock, reserving an option to require the repurchase of part of the new stock for cash. Taxpayer exercised the option 5 days later. We held that the transactions involved were separate transactions (1) of an exchange of stock and (2) of an option to sell, and not a single transaction consisting of an exchange of stock for stock and cash. We think that the circumstances involved in the *Ward* case are different from those involved in the instant case where there was a concurrent transfer of cash and stock for all of the stock of Binkley and all of the stock of Pyramid, other than that owned by Binkley. In the *Ward* case the exchange of stock for stock was independent of the subsequent exercise of the option, a right which might never have been exercised, as distinguished from the closely interrelated and interdependent transfers here involved.

We have considered the following cases relied upon by petitioners, but since it is evident from the opinions that they are readily distinguishable upon their facts from the instant case, an extended discussion appears unnecessary: *Commissioner* v. *Harris*, (C. A. 3, 1937) 92 F. 2d 374, affirming a Memorandum Opinion of this Court; *United States* v. *Rodgers*, (C. A. 3, 1939) 102 F. 2d 335; *Bruce* v. *Helvering*, (C. A., D. C., 1935) 76 F. 2d 442, reversing 30 B. T. A. 80 (1934) ; and *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481 (1937).

We now turn to petitioners' main contention which is, in effect, that the acquisition by one corporation of at least 80 per cent of the only class of stock outstanding of another corporation for stock is an acquisition "solely" for stock within the meaning of the definition of a reorganization under section 112 (g) (1) (B) and qualifies as a tax-free exchange to that extent under section 112 (b) (3), regardless of other consideration given by the transferee corporation for additional stock in excess of the minimum requirement of 80 per cent. Petitioners argue that, in order for the exchange to constitute a nontaxable exchange, only (a minimum of) 80 per cent of the stock of Binkley need be acquired solely for stock, and that Truax-Traer acquired 80.19 per cent of the outstanding Binkley stock solely for stock within the meaning of sections 112 (b) (3) and 112 (g) (1) (B). Petitioners consider the acquisition of any additional stock, in excess of 80 per cent, solely for stock, as having merely undertaken more than the statute requires, and therefore of no effect in respect to the taxability or nontaxability of the transaction. Likewise, they consider the acquisition of additional stock in excess of the required 80 per cent for a consideration other than stock (other property or money) of no effect, since the minimal statutory standards have been met.

On the other hand, respondent contends that the entire transaction should be treated as a single exchange in which the acquiring corpora-

tion gave both stock and cash for the stock(s) acquired, thereby failing to comply with the requirement of a nontaxable exchange under section 112 that the exchange be solely for stock. Respondent further contends that the statute requires the stockholders of at least 80 per cent of the stock of Binkley to receive in exchange for their stock only voting stock of Truax-Traer. Such a requirement was not met in the instant case. However, in view of our holding below, it is unnecessary to consider such further contention..

Basically the question before us is whether the statute requires all of the Binkley stock acquired by Truax-Traer in the transaction of June 23, 1950, to have been acquired only ("solely") for stock, or whether it is sufficient if a minimum of ("at least") 80 per cent of the outstanding Binkley stock was acquired for an appropriate amount of Truax-Traer stock, even though the remainder acquired in excess thereof was so acquired for a consideration other than stock. The transaction in question would clearly qualify as a nontaxable exchange (to the extent of the exchange of stock for stock) on the latter theory, but would obviously not so qualify under the former. We recognize that there is force to petitioners' argument that the practical objectives of the statute might well be satisfied if we were to adopt the construction urged. We think, however, that the authorities have clearly established the applicable rule of law to be that the consideration for whatever stock is acquired by the transferee corporation in a transaction such as that before us must be solely the transferee's voting stock, and nothing else. *Helvering* v. *Southwest Corp.*, 315 U. S. 194 (1942); *Commissioner* v. *Air Reduction Co.*, (C. A. 2, 1942) 130 F. 2d 145 (certiorari denied 317 U. S. 681) reversing a Memorandum Opinion of this Court on another point; *Pressed Steel Car Co.* v. *Commissioner*, (C. A. 3, 1945) 152 F. 2d 280, affirming a Memorandum Opinion of this Court; *Central Kansas T. Co.* v. *Commissioner*, (C. A. 10, 1944) 141 F. 2d 213, affirming a Memorandum Opinion of this Court.

In the *Southwest* case a plan of reorganization called for the formation of a new company to acquire the assets of the old corporation in exchange for voting common stock and class A and class B stock purchase warrants. The precise issue was whether or not the transaction qualified as a "reorganization" under the then section 112 (g) (1) (B), in all pertinent respects substantially the same as subsections (B) and (C) of section 112 (g) (1) of the 1939 Code [2] here applicable. The Supreme Court, in holding that the transaction did not constitute a reorganization within the meaning of section 112 (g) (1) (B), stated the applicable principle of law as follows:

---

[2] Essentially, section 112 (g) (1) (B) of the Revenue Act of 1934 contained in a single provision the separate provisions of section 112 (g) (1) (B) and (C) of the 1939 Code.

the 1934 Act effects an important change as respects transactions whereby one corporation acquires substantially all of the assets of another. See S. Rep. No. 558, 73d Cong., 2d Sess., Committee Reports, Revenue Acts 1913–1938, pp. 598–599. The continuity of interest test is made much stricter. See Paul, Studies in Federal Taxation (3rd Series), pp. 36–41. Congress has provided that the assets of the transferor corporation must be acquired in exchange "solely" for "voting stock" of the transferee. "Solely" leaves no leeway. Voting stock plus some other consideration does not meet the statutory requirement. See Hendricks, Developments in the Taxation of Reorganizations, 34 Col. L. Rev. 1198, 1202–1203. * * * the requirements of § 112 (g) (1) (B) are not met if properties are acquired in exchange for a consideration other than, or in addition to, voting stock. Under that test this transaction fails to qualify as a "reorganization" under clause (B).

In the *Central Kansas Telephone* case the taxpayer (new company), pursuant to a plan of reorganization, acquired the assets of the Kansas Telephone Company (old company) from a bondholders' committee for voting stock of the new company, cash, and the assumption of certain liabilities. In affirming this Court's holding that the exchange did not constitute a nontaxable reorganization or a nontaxable exchange, the Court of Appeals concluded that the assets of the old company were acquired by the new company in exchange for the latter's stock and cash, and, therefore, that they were not acquired solely in exchange for voting stock in accordance with the terms of the statute.

Similarly, in the *Pressed Steel Car Co.* case the assets of an old corporation then in the hands of a receiver were, in accordance with a court-approved plan of reorganization, acquired for voting stock and certain stock warrants of the new corporation, organized to take over the business of the old company. The Court of Appeals affirmed our decision to the effect that, if the rights or warrants were valuable, the transfer was not solely for voting stock and, therefore, that the transaction failed to meet the requirements of a reorganization under 112 (g) (1) (B).

The rule has been specifically applied in *Air Reduction* in the case of an acquisition of stock rather than assets. There Air Reduction Co. began acquiring stock of Pure Carbonic Company of America in 1929. Up to January 1, 1935, it had acquired 87,275 shares of Pure Carbonic stock in exchange for its own stock and 7,906 shares of Pure Carbonic stock for cash. The shares thus acquired constituted 73 per cent of Pure Carbonic's 130,099 shares then outstanding.

In 1935, Pure Carbonic increased the number of its shares outstanding to 132,299, and Air Reduction Co. acquired 100 per cent ownership by a purchase of 14,771 shares of Pure Carbonic for cash, and an exchange of 5,258 shares of its own stock for the remaining 22,347 shares of Pure Carbonic. At this point, 82 per cent of the Pure Carbonic stock had been acquired by Air Reduction Co. in a series of ex-

changes for its own stock, and the remaining 18 per cent had been acquired for cash. The 5,258 shares of stock used in the 1935 exchange consisted of Air Reduction Co. treasury stock which had been issued and later repurchased for cash in the amount of $182,536.73. In the same year, 1935, Air Reduction Co. sold some of its treasury stock for cash.

The Commissioner treated both the exchange of Air Reduction treasury stock for stock of Pure Carbonic and the sale of Air Reduction treasury stock as taxable. We held that neither transaction gave rise to income, largely on the theory that a corporation could not realize taxable gain on dealings in its own stock. On appeal, the Court of Appeals for the Second Circuit reversed, and found that both the exchange of Air Reduction treasury stock for stock of Pure Carbonic and the sale of Air Reduction treasury stock did result in realization of gain. The Court of Appeals then considered the taxpayer's alternative contention, with respect to the exchange transaction, that such gain was not to be recognized since it was realized upon a nontaxable exchange, and in this respect said:

Finally the taxpayer urges that, in the exchange by which the Pure Carbonic Company stock was acquired, no taxable gain could result because that was a non-taxable reorganization. But this theory is not tenable because the definition of reorganization in § 112 (g) (1) (B) of the 1934 Act, 26 U. S. C. A. Int. Rev. Acts, page 695, contemplates only situations where the exchange is made "solely" for voting stock. Here over 17% of the Pure Carbonic stock was purchased for cash. Cf. *Helvering* v. *Southwest Consolidated Corp.*, 315 U. S. 194, 62 S. Ct. 546, 86 L. Ed. 789.

See also *Elizabeth Bruce*, 30 B. T. A. 80, 82–83 (1934), reversed on another point (C. A., D. C., 1935) 76 F. 2d 442, *supra; Robert A. Pulfer*, 43 B. T. A. 677 (1941).

We think the foregoing authorities dispose of the problem in the instant case, in which, as part of a single transaction, Truax-Traer acquired all of the stock of Binkley for both its own stock and cash. We hold that such an acquisition is not "solely for stock" within the intendment of sections 112 (g) (1) (B) and 112 (b) (3).

*Southland Ice Co.*, 5 T. C. 842 (1945) relied on by petitioners, involved an entirely different issue than that presently before the Court, and is distinguishable. There a reorganization was worked out in foreclosure proceedings whereby a committee bought the assets of the old company. The participating bondholders received all the stock of the new company and new income bonds. The nonassenting bondholders were paid in cash by the receiver "an amount which represented the corresponding portion of the bid price for the properties." We found that the cash was actually available out of operating income accumulated during the receivership, "so that in fact it constituted

a part of the assets belonging to the old corporation, or to its owner creditors as a group," and held accordingly that the cash paid to the nonassenters was never transferred to the new company. No such circumstance is present in the instant case where the cash transferred in the acquisition of Binkley and Pyramid stock was at all times that of Truax-Traer, the transferee corporation.

Some of our language in *Southland*, set out below, indicates clearly that the case was decided in full recognition of the principles here expressed.

Fundamentally, the question of interpreting the statutory language reduces to this: Does "solely for voting stock" mean that whatever property is acquired must be paid for by the transferee in its voting stock, and nothing else, * * * In the former case the present transaction would qualify, since the cash paid to the nonassenters was never transferred to the new company; * * *

This approach seems to us to find support in the language of *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194, that "the requirements of section 112 (g) (1) (B) are not met if properties are acquired in exchange for a consideration other than, or in addition to, voting stock." * * *

* * * * * * *

The Supreme Court in * * * [the *Southwest*] case resorted not so much to the words employed in the statute as to the concept that the procedure there followed was but an indirect method of accomplishing what the statute was designed to forbid, namely, payment by the transferee to the transferor or its owners of cash as part consideration for the transfer. * * *

* * * * * * *

Hence, only in such a situation as this, where an inconsiderable minority interest needs to be paid off in cash, and the corporate business and "substantially all" the corporation's property is continued in the control of a correspondingly complete group of the transferor's owners, can there be found the requisite fulfillment of the statutory requirements. So limited, it is difficult to see the possibility that any can qualify save true reorganizations in the economic sense.

The consequence would seem to be that this was not, on the one hand, a transfer of properties "in exchange for a consideration other than, or in addition to, voting stock," within the *Southwest* principle, but that it was, on the other, the acquisition of substantially all, but not quite all, of a corporation's property solely in exchange for the transferee's voting stock, within the express terms of section 112 (g) (1) (B), even though the small fraction of the property not so transferred was used in its entirety to pay off in cash the dissenting property owners.

See also *Roosevelt Hotel Co.*, 13 T. C. 399 (1949) ; *Westfir Lumber Co.*, 7 T. C. 1014 (1946) ; *Peabody Hotel Co.*, 7 T. C. 600 (1946).

At the time of the hearing herein, respondent offered into evidence two documents to which objection was lodged by petitioners. The documents were conditionally received subject to further consideration. Inasmuch as our determination hereinbefore has been reached without consideration of the exhibits proffered by respondent, we think it is unnecessary to consider whether they are properly admissible.

*Decisions will be entered under Rule 50.*